JAMES L. HARROLD, SR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harrold v. Commissioner
Docket No. 18403-89
United States Tax Court
T.C. Memo 1991-274; 1991 Tax Ct. Memo LEXIS 317; 61 T.C.M. (CCH) 2925; T.C.M. (RIA) 91274; June 17, 1991, Filed *317 Decision will be entered for the respondent. James L. Harrold, Sr., pro se. John R. Keenan, for the respondent. DAWSON, Judge.
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Taxable
Additions to Tax
Year
Deficiency
Section 6653(b) [1]
Section 6654
1979
$ 10,461.00
$  5,231.00
$   436.00
1980
$ 13,500.00
$  6,750.00
$   861.00
1981
$ 26,039.00
$ 13,020.00
$ 1,995.00
After concessions by petitioner, [2] the only issue remaining for decision is whether two purported trusts are entitled to be recognized as taxable entities, separate and distinct from petitioner, for Federal income tax purposes. *318 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts and accompanying exhibits are incorporated herein by this reference. Petitioner resided in Decatur, Arkansas, at the time he filed his petition in this case. During the years involved herein petitioner was employed by Consultants and Designers, Inc., as a mechanical engineer/design checker at the McDonnell Douglas Military Airplane Manufacturing facility in Tulsa, Oklahoma. He did not file Federal income tax returns for 1979, 1980, and 1981 although he received wages in those years. [3] Petitioner's employer did not withhold income taxes from his wages in 1979, 1980, and 1981, but did withhold $ 1,403.77, $ 1,587.67, and $ 1,975.05, respectively, in Federal Insurance Contributions Act (FICA) taxes. *319 On March 31 and April 1, 1979, petitioner attended a meeting of the National Tax Freedom Forum in Oklahoma City, Oklahoma. That organization presented lectures and discussions concerning Federal income tax issues, such as "Federal reserve notes are not dollars" and "wages are not taxable income." The masters of ceremonies were Ardie McBrearty [4] and Bert McCarty. *320 On February 6, 1980, petitioner executed a document, purporting to establish a trust, which he purchased from Mr. McBrearty and Mr. McCarty. The document is entitled "Declaration of Trust of This A Constitutional Pure Equity Trust" and "authorizes its trustees to operate under the name of: Zident Educational Trust." The Zident Trust document is comprised of preprinted pages containing blank spaces which were filled in by petitioner, or from information he supplied. According to the Zident Trust document, petitioner named Mr. McBrearty the "first and original trustee," and Mr. McBrearty appointed Mr. McCarty and a Roger F. Williams as additional trustees. The trustees of the Zident Trust resided in three different states. All three trustees signed a single-page document included within the Zident Trust document entitled "Trustees Affidavit [sic] of Fact" which states: under penalties of perjury, that each person and as a collective board of persons serving as Trustees are not related, kinsmen of any blood line whatsoever of [petitioner]; further that each person is entering the position as a Trustee unto: ZIDENT EDUCATIONAL TRUST
as a person qualified in every *321 respect to exercise the fruits of his or her conscience, judgment, and independent thinking, said persons being totally and completely free of any and all domination and/or control or subornation which might be exercised by the Grantor or any other person outside this board of Trustees.
The Zident Trust document also contains a page entitled "Trust Receipt and Notice of Exchange" which recognizes that petitioner conveyed certain property and his lifetime services "in furtherance of the trust." The corpus of the trust initially consisted of petitioner's personal property and household effects, 4,200 shares of Doornfontein Gold Mining Co., Ltd., ADR (Doornfontein) stock, and 1,100 shares of Bracken Mines, Ltd., ADR (Bracken) stock. The Doornfontein and Bracken stocks are shares in South African gold mining concerns. The Zident Trust document listed petitioner's residence address in Tulsa, Oklahoma, as the address of the trust's principal place of business. All personal property conveyed to the trust remained in petitioner's apartment after the Zident Trust was created. He continued to use and enjoy the property conveyed to the trust in the same manner as he did prior to the *322 creation of the Zident Trust. Petitioner never paid any rent to the trust for use of the assets transferred to the Zident Trust. The trustees of Zident made no effort to collect rent for petitioner's use of the "trust's assets." In exchange for the alleged conveyance of his property and lifetime services, petitioner received a certificate for 100 units of beneficial interest in the Zident Trust as "full and complete compensation." Subsequently, the 100 beneficial income units were redistributed, and five new certificates for 20 beneficial income units were issued to petitioner and each of his four children. The certificates contained the following language: This certificate conveys no interest of any kind in the Trust assets, management, or control thereof. Benefits hereby conveyed consist solely of the emoluments as distributed by the actions of the trustees and nothing more.
The Zident Trust document does not name petitioner as a trustee. However, the minutes of the fourth meeting of the board of trustees allegedly held on February 6, 1980, state that petitioner was appointed "executive secretary" by the trustees. On February 6, 1980, petitioner and the trustees executed *323 a document entitled "Common Law Contract" which purports to grant the trustees discretion to terminate petitioner's contract as executive secretary; and authorizes petitioner, under the guidance and supervision of the trustees, to perform the duties as set forth in the minutes of the Trust. Petitioner typed the minutes of the alleged meetings of the Zident trustees. On February 29, 1980, petitioner opened a checking account in the name of Zident Educational Trust at the Admiral State Bank in Tulsa, Oklahoma. He kept possession of the checkbook and prepared the checks issued in the name of the trust. He had signature authority on the checking account along with the three trustees, but the checks required two signatures. On January 27, 1981, petitioner opened an account at Merrill, Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) in the name of Zident Educational Trust. William J. Rea, Jr. (Mr. Rea), was the Merrill Lynch employee and broker who processed the stock transactions for petitioner and the Zident Trust. [5] Petitioner advised Mr. Rea that he would be the person conducting business on behalf of the trust and, in fact, was the only person who instructed Mr. Rea with *324 respect to transactions conducted in the name of the trust. Mr. Rea never received instructions from any of the three named trustees. The Zident Trust only purchased South African gold mining stock. In June 1981, petitioner ordered through Mr. Rea the purchase of 2,000 additional shares of Bracken stock in Zident's account. In October 1981, petitioner ordered Mr. Rea to sell all shares of Bracken that Zident then held. The proceeds from the sale of the stock were deposited in Zident's checking account. Forms 1099 were issued to Zident Trust with respect to the gold mining stock reporting the following information for the years listed below: Gross
Foreign
Dividend
Taxes
Expense
Year
Amount
Withheld
Withheld
Net
Payor
1980
$ 1,197.90
$   179.68
$ 21.61
$   996.61
Bracken Mines
1980
$ 5,485.20
$   822.78
$ 42.40
$ 4,620.02
Doornfontein
Total
$ 6,683.10
$ 1,002.46
$ 64.01
$ 5,616.63
1981
$   400.40
$    60.06
$ 11.44
$   328.90
Bracken Mines
1981
$ 7,358.40
$ 1,103.76
$ 42.82
$ 6,211.82
Doornfontein
Total
$ 7,758.80
$ 1,163.82
$ 54.26
$ 6,540.72
*325 The net dividends received in both years were deposited in Zident's checking account. Zident reported the gross dividends received in each year on its Form 1041, U.S. Fiduciary Income Tax Return, deducted the expenses withheld, and claimed a foreign tax credit for the foreign taxes withheld. The Form 1041 filed by the Zident Trust showed a Federal income tax liability of zero for the calendar years ended December 31, 1980 and 1981, because the foreign tax credits claimed exceeded the tax liability attributable to the dividends received and gains reported. The returns for both years indicated that the trust was a family estate trust. The Zident Trust is no longer active. On January 7, 1981, Zident trustee McBrearty allegedly wrote a letter to the other trustees advising them that "in order to ensure the preservation the Trust corpus" the Board should convey all or most of the trust corpus to another trust that has more flexibility built into "its managing officer's authority" than does the Zident Trust. Undated minutes of an alleged "trustees' meeting conducted by mail" state that the trustees resolved to meet and discuss the issue of forming a new trust on January 24, 1981. *326 On January 24, 1981, the Zident trustees executed a document entitled "Contract of Declaration of this Pure Trust" which "authorizes its trustees to operate under the name of: Zibiz Research Trust." The Zibiz Trust document also consisted of preprinted forms with blank spaces and contained substantially the same language as the Zident Trust. Excerpts of the language common to both trusts has been reproduced in the appendix attached hereto. The Zibiz Trust document named Andrew J. Batusic as the "first and original trustee." Mr. Batusic appointed his wife, Dorothy J. Batusic, and brother-in-law, Sam Zabrdac, as additional trustees. [6] The Zibiz trustees did not know petitioner before they became trustees of the Zibiz Trust. The Zident Trust is the sole *327 beneficiary of the Zibiz Trust. Petitioner is not mentioned in the Zibiz Trust document as being either the grantor, a trustee, or a beneficiary of the Zibiz Trust, but his residence is listed as Zident's principal place of business. In the fourth meeting of the board of trustees allegedly held on January 24, 1981, petitioner was appointed as the "manager" of the Zibiz Trust at an annual salary of $ 400, and was "authorized to perform those duties as are set forth in the minutes." Petitioner typed the minutes of all of the alleged meetings of the trustees on the Zibiz Trust. The minutes of the first four meetings of the trustees of the Zibiz Trust are all dated January 24, 1981, and all of them conclude with the sentence "with no further business to conduct, the Meeting was adjourned by the vote of the Trustees." The corpus of the Zibiz Trust originally consisted of 4,200 shares of Doornfontein stock and $ 500 cash. On February 13, 1981, petitioner opened a checking account in the name of Zibiz Research Trust at the Republic Bank & Trust Company in Tulsa, Oklahoma. Petitioner had signature authority on the Zibiz Trust checking account along with the three trustees. He was also *328 the record keeper of the Zibiz Trust. He kept possession of Zibiz' checkbook and prepared the checks issued by the trust. Before becoming trustees of the Zibiz Trust, none of the trustees had any experience in dealing with South American gold mining companies. Petitioner made all of the decisions regarding the purchases and sales of the gold mining stocks for Zibiz. Mr. Batusic became trustee of Zibiz knowing that all decisions would be made by petitioner. [7]
In March 1981, all of the shares of Doornfontein stock were sold and the proceeds ($ 84,090.12) were deposited in the Zibiz Trust checking account. Zibiz Trust paid $ 1,449.08 in Federal income taxes for its 1981 tax year. In January 1982, Zibiz Trust purchased real property with a trailer home situated *329 on it in Decatur, Arkansas. In March 1982, at the alleged 13th meeting of the trustees of the Zibiz Trust, a resolution was passed which stated that if petitioner should be terminated from his employment, he would be allowed to live in the trust's trailer home. In April 1982, petitioner's employment was terminated and he has remained unemployed. After his employment was terminated he moved into the trailer and he has continued to reside there. Both the Zident Trust and the Zibiz Trust moved their principal place of business to petitioner's new Decatur, Arkansas, address. No person other than petitioner has ever resided in the trailer. The Zibiz Trust has paid all monthly expenses incurred at the trailer, including electric, gas, and telephone bills. The Zibiz Trust purchased a Jeep from one of petitioner's sons. Petitioner is the only person associated with the Zibiz Trust who has driven the Jeep. The Zibiz Trust also purchased a motor boat and trailer, purportedly as an investment, and a washer and dryer. At petitioner's direction, the Zibiz Trust purchased bedroom furniture and children's furniture which was delivered to the residence address of the daughter of Trustees *330 Andrew and Dorothy Batusic. Petitioner never paid any rental for the use of Zibiz Trust assets, and the trustees have never made any effort to collect rent. Although the purpose of Zibiz was to make money for Zident, it has only transferred $ 4,000 to Zident. ULTIMATE FINDINGS 1. The creation of the Zident Trust was a sham without economic substance apart from tax considerations. Petitioner was the owner of the property held in the name of the Zident Trust and he is taxable on the income received therefrom in the years 1980 and 1981. 2. The creation of the Zibiz Trust was a sham without economic substance apart from tax considerations. Petitioner was the owner of the property held in the name of the Zibiz Trust and he is taxable on the income received therefrom in the year 1981. OPINION Respondent contends that petitioner is taxable on the dividends and capital gains in his individual capacity because the creation and operation of the Zident Trust and the Zibiz Trust lacked economic substance and constitute sham transactions for the purpose of tax avoidance. We agree. The language of the trust documents in this case is similar to the language included in the so-called *331 family trusts which this Court has repeatedly held to be invalid for Federal income tax purposes. See and compare the language in the attached appendix to the language cited in ; ; ; ; , affd. ; and . The parties agree as to the amounts of taxable dividends received from the South African gold mining companies and the amounts of capital gains received from the sales of the stocks. The only controversy is whether petitioner is taxable on the income or whether the two trusts purportedly created by petitioner should be recognized as entities separate and distinct from petitioner, and, as such, taxable on the income. The answer, of course, depends on which person or entity in fact controls the earning of the income rather than who ultimately receives *332 the income. . Although a taxpayer has a legal right to avoid or minimize taxes, that right does not bestow the right to structure a paper entity to avoid tax when the entity does not stand on the solid foundation of economic reality. When the form of a transaction does not alter economic relationships, the Courts will disregard the form and apply the tax law according to the substance of the transaction. . Zident Trust
Based on the facts in this record, it is our opinion that the Zident Trust was a sham having no economic substance or utility apart from tax considerations. Several facts support this view. First, petitioner's relationship to the property transferred to the trust did not change in any significant respect before and after creation of the trust. He continued to use the furnishings, appliances, and other property as he had done before the trust was created. Second, petitioner had control of the trust's assets and operations. He was its executive secretary. He decided what expenditures the trust would incur and then issued the checks *333 to make the purchases. He controlled the investments made by the trust. It is clear that petitioner had the power to deal with the trust property as his own, and did, in fact, deal with it as his own. Third, there was no purpose other than tax avoidance for creating the Zident Trust. Although it is asserted that the trust was created to further Christian and patriotic ideas, there is no evidence that the trust engaged in such activities. The only purpose, as we see it, was to facilitate petitioner's tax avoidance scheme. Petitioner argues that the Zident Trust is not a "family estate" trust and attempts to distinguish it from the typical family estate trust on the following grounds: (1) Neither petitioner nor any of his family members served as a trustee of the trust; (2) petitioner did not exercise control over the trustees of the trust; (3) the Zident Trust was not created to provide for the financial care of petitioner; and (4) he did not transfer any real property or his wages to the trust. We reject petitioner's contention that the trustees were independent. In our judgment the record shows that the three trustees were nothing more than straw men who gave no recognition *334 to their fiduciary responsibilities. They made no effort to make the trust's property productive. They permitted petitioner to use the trust property without charge. They passively acquiesced in petitioner's wishes and did nothing to act independently of his wishes. , affd. per curiam . The Zident Trust was created and used to provide financially for petitioner, and he used the transferred property free of charge. The purchased items, such as golf equipment, VCR's, and furniture were obviously for his use. Petitioner further contends that the Zident Trust is not a family estate trust because he did not transfer any real property or his wages to it. Since petitioner was living in a rented apartment when the trust was created, he did not have a home to transfer to the trust. The fact that he did not transfer his wages to the trust is not a sufficient distinction to require us to recognize the trust as a separate and distinct entity for Federal income tax purposes. We note that, while petitioner argues that the Zident Trust is not a family estate trust, the trustees *335 thought it was a family estate trust because on the trust tax returns for 1980 and 1981 they indicated that the trust was a family estate trust. Zibiz Trust
Petitioner contends that the Zibiz Trust is a valid trust that should be recognized for Federal income tax purposes. The main thrust of his argument is that the Zibiz Trust was created by the trustees of the Zident Trust rather than by him and he had no control over its trustees. The record, however, shows that the creation of the Zibiz Trust was merely a sham transaction and a part of petitioner's overall scheme to evade the payment of Federal income taxes. We think there are several factors indicating that the Zibiz Trust had no economic substance apart from tax considerations. The first factor is that petitioner had control over the assets and the operations of the trust. He was appointed the trust manager by the trustees. He had signature authority on the Zibiz Trust's checking account and kept the checkbook in his possession. He was the recordkeeper of the trust. He typed all of the minutes of the alleged trustees' meetings. He was also the only person connected with the Zibiz Trust that had dealings in South *336 African gold mining companies. It was petitioner who decided when the trust would purchase stock and it was he who decided when the trust would sell the stock. A second factor which indicates that the creation of the Zibiz Trust was a sham is the fact that the trustees failed to recognize their fiduciary responsibilities. They failed to use reasonable care and they felt no compulsion to make the trust's property productive. The record establishes that the major asset of the Zibiz Trust was the 4,200 shares of Doornfontein Gold Mining Company stock. After the stock was sold, the trust used the funds to purchase real property in Decatur, Arkansas. The trustees, however, failed to make this an income-producing asset for the trust. Petitioner admitted that he has resided in a trailer home on this property rent free from April 1982 until the time of trial. The trustees made no effort to collect rent from petitioner for his use of the trust's assets. A third factor which indicates that the creation of the Zibiz Trust was a sham is that there was no purpose other than tax avoidance for its creation. The documents used to create the Zibiz Trust state that its purpose was to preserve *337 and increase the trusts assets so as to provide funds to the trust's beneficiary, which was the Zident Trust. The record shows, however, that the funds allegedly controlled by the Zibiz Trust were not invested to make money for the Zident Trust, but instead were used to pay petitioner's personal living expenses. Andrew J. Batusic, one of the trustees of the Zibiz Trust, testified that only $ 4,000 had been transferred to the Zident Trust during the 10 years the Zibiz Trust has been in existence. Finally, petitioner did not recognize the Zibiz Trust as a separate and distinct entity. He used what was allegedly the Zibiz Trust's trailer home as his personal residence for approximately 7 years without paying any rent. He had the trust pay for all of his personal expenses such as telephone, electric, and gas bills. He also had the trust purchase a Jeep and a boat for his use. To be sure, petitioner dealt with the Zibiz Trust property free from fiduciary restraints. Economically, there was no separation of legal title from beneficial enjoyment. The trust was simply a nullity for Federal income tax purposes. Its real purpose was to shift income from petitioner and thus reduce *338 his taxes. We have considered other arguments raised by petitioner and find them contrary to the facts, unpersuasive, or without merit. In summary, what we have here are two paper entities that completely lacked vitality and substance. Petitioner chose to follow McBrearty, Batusic and Zabrdac -- three tax protesters with criminal records -- in creating phony tax avoidance schemes. Decision will be entered for the respondent.
APPENDIX The following are excerpts of language common to the Zident Educational Trust and the Zibiz Research Trust: ADMINISTRATION The Trustees shall regard this instrument as their sufficient guide, supplemented from time to time by resolutions of their Board covering contingencies as they arise and recorded in the minutes of their meetings, or by-laws, rules or regulations, as deemed expedient and consistent with the orderly conduct of business. OFFICERS AND MANAGEMENT The Trustees may in their discretion elect among their number a President, Secretary and Treasurer, or any other officers they may deem expedient for proper functioning. Any Trustee may hold two, or more, offices simultaneously, their duties being such as are usual or are prescribed. *339 They may employ agents, executives, or other employees, or designate third persons to hold funds for specific purposes. EXPENDITURES The Trustees shall fix and pay compensation of all officers, employees or agents in their discretion, and may pay themselves such reasonable compensation for their services as may be determined by the Board of Trustees. CONSTRUCTION The Trustees, officers, agents or employees possess only such authority as awarded then herein, Authority is understood and meant to be similar to that awarded an executor of an estate wherein the testator directs (illustration) "that my Executor is directed to handle the estate in the manner he thinks to be to the best interest, limited by the terms hereof, without the necessity of resort to the court for permission or approval of any transaction, intending herein to leave open for the court the question of conscientious dealing of my Executor only." * * * CERTIFICATES OF INTEREST For convenience, the equitable interests for distribution shall be divided into One Hundred (100) units, substantially in the certificate form hereto attached, Having no determinate value, they shall be non-assessable, non-taxable and non-negotiable *340 and the lawful possessor thereof shall be construed the true and lawful owner thereof. The lawful owner may, if he so desires, cause his beneficial certificate to be registered with the Secretary of the Board of Trustees. TRUSTEES MEETINGS By a regular act of the Trustees they may provide for meetings at stated intervals without notice and special meetings may be called at any time by two or more Trustees upon three days' written notice. at any regular or special meeting a majority of the Trustees shall constitute a quorum for conducting business, PROVIDED, affirmative action may only be had upon a majority vote of the Trustees, whether present or absent, except that at special meetings called for a special purpose the majority present may affirmatively act in emergency matters. POWERS OF TRUSTEE Trustees' powers shall be construed as general powers of citizens of the United States of America, to do anything any citizen may do in any state or country, subject to the restrictions herein noted, They shall continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment ,as herein specially noted, at their *341 discretion for the benefit of this Trust, such as, viz.: buy, sell or lease land for surface or mineral rights; buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits, of any form, patents, trademarks or copyrights; buy, sell, or conduct mail-order business, or branches thereof; operate stores, shops, factories, warehouses, or other trading establishments or places of business of any kind; construct, buy, sell, lease or rent suitable buildings or other places of business; advertise different articles or business projects; borrow money for any business project pledging the Trust property for the payment thereof; hypothecate assets, property, or both, or [sic] the Trust in business projects; own stock in, or entire charters of corporations, or other such properties, companies, or associations as they may deem advantageous. Resolutions of the Board of Trustees authorizing a special thing be done shall be evidence that such act is within its power. Any one lending or paying money to the Board of Trustees shall not be obliged to see the application thereof, all funds paid into the treasury are and become a part of the corpus of the Trust. DURATION *342 -- CLOSURE This trust shall continue for a period of twenty-five years (25 years) from date, unless the Trustees shall unanimously determine upon an earlier date. The Trustees may at their discretion, because of threatened depreciation in values, or other good and sufficient reason, liquidate the assets, distribute and close the Trust at any earlier date determined by them. The Trust shall be proportionately and in a pro rata manner distributed to the beneficiaries. * * * PURPORT The purport of this instrument is to convey property to Trustees to constitute a Trust (estate) for the benefit of the beneficiaries, held by trustees, in trust and in joint tenency for the duration hereof, and to provide for a same and economical administration by natural persons acting in a fiduciary capacity, to begin at once and not to be deferred until after the death of any creator, settler [sic] or maker, as occurs when such Trust Estates are created by Last Will and Testament, the settlers, [sic] creators or makers of this covenant preferring that the Trustees act solely within their constitutional rights as based upon their common law rights and immunities vouchsafed to citizens of the United *343 States America and defined in Article IV, section 2, PROVIDING, that "Citizens of each state shall be entitled to all privileges and immunities [sic] of citizens in the several states," and Article VI, section 2, PROVIDING, that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The administration of this Trust shall be amendable to judicial regulation on occasion arising and under the paternalism and protection of the court. Citations applicable and various rulings pertaining to Trust Estates and constitutional rights of contract and collective bargaining (except copartnership relationship, which is not applicable) may be found. Nothing herein contained shall be construed as an intent to evade or to contravene any Federal or State Law, nor to delegate to Trustees any special power belonging exclusively to franchise of incorporation. Footnotes
1. All section references are to the Internal Revenue Code as amended in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner has conceded that he received wages of $ 35,775 in 1979, $ 36,328 in 1980, and $ 36,688 in 1981; and that he is liable for the additions to tax under secs. 6653(b) and 6654. He has also made concessions with respect to other adjustments for capital gains and dividend income.↩
3. We note that petitioner was indicted, tried, and found guilty of three counts of willfully attempting to evade or defeat the payment of Federal income tax in violation of sec. 7201 for each of the years 1979, 1980, and 1981.↩
4. Mr. McBrearty is no stranger to the judicial process. See , holding that an agreement is unenforceable, as being against public policy, which guarantees to pay legal defense and family expenses if one of the defendant's members is incarcerated for tax violations; and , involving McBrearty and others who were convicted of violating the Federal racketeering laws (RICO) and other offenses including armed robbery of banks, transporting stolen property across state lines, and harboring fugitives.↩
5. Mr. Rea previously opened an account for petitioner on September 15, 1977. Petitioner dealt primarily with South African gold mining stocks prior to the creation of the Zident Trust.↩
6. Andrew J. Batusic and Dorothy L. Batusic were both convicted of filing false Forms W-4 with the Internal Revenue Service in violation of sec. 7205. Sam Zabrdac was convicted for failure to file a Federal income tax return for 1978 in violation of sec. 7203.↩
7. Andrew J. Batusic and Dorothy J. Batusic created a similar trust to that of the Zibiz Research Trust for themselves called the Chop Zhi Ben Trust. One of the trustees of the Chop Zhi Ben Trust was Ardie McBrearty, who was also a trustee of the Zident Trust.↩